## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANGEL LUIS THOMAS, | | No. 3:16-CV-00451 |
| Plaintiff, | | (Judge Brann) |
| v. | | |
| ANGELA R. DUVALL, *et al.*, | | |
| Defendants. | | |

## MEMORANDUM OPINION

### JULY 7, 2020

## I.    BACKGROUND

Angel Luis Thomas, formerly a Pennsylvania state prisoner confined at the State Correctional Institution in Huntingdon, Pennsylvania ("SCI Huntingdon"), filed this amended civil rights complaint alleging that numerous prison officials violated his Constitutional rights.[1] Thomas raised several claims including, as relevant here, claims that Defendants interfered with his access to courts and with his rights of free speech, association, and privacy.[2] The events underlying these claims involve, to a significant degree, Thomas' attorney, Marianne Sawicki, Esq.[3]

In October 2019, Chief Magistrate Judge Susan E. Schwab issued a Report and Recommendation recommending that this Court grant in part and deny in part

---

[1]    Doc. 21.
[2]    *Id.*
[3]    *Id.*

Defendants' motion for summary judgment.[4] First, Chief Magistrate Judge Schwab recommended finding that Defendants had admitted certain facts in Thomas' amended complaint by failing to properly deny those allegations, as required by Federal Rule of Civil Procedure 8(b).[5] Specifically, she recommended that "the factual allegations in Paragraphs 37-39, 45, 59, 72, 74-76, 81, 83-84, 86-87, 90-91, 93-97, 100, 108-111, 114-115, 118-120, 122, 126, and 133-134 of the amended complaint [be] deemed admitted for the defendants' failure to deny them."[6]

With regard to Thomas' access to courts claim, Chief Magistrate Judge Schwab determined that this claim should survive summary judgment, as several admitted allegations supported Thomas' claim.[7] Specifically, two prison officials "made Thomas and Sawicki meet in the middle of the visiting room and then refused to carry papers back and forth between them after [they were] placed . . . on either side of a glass wall."[8] Additionally, Defendants "required Thomas and Sawicki to meet in a non-contact booth with inoperative phones, causing them to have to shout and allowing other inmates to hear their conversation."[9] The sum of these admitted facts "could establish that [Defendants] interfered with Thomas's ability to visit with his attorney."[10]

---

[4]  Doc. 87.
[5]  *Id.* at 16-21.
[6]  *Id.* at 20.
[7]  *Id.* at 38-43.
[8]  *Id.*
[9]  *Id.*
[10]  *Id.* at 43.

As to Thomas' freedom of speech and association claims, Chief Magistrate Judge Schwab recommended that summary judgment be denied, as Defendants failed to demonstrate a rational connection between their actions and any legitimate penological interest.[11] Chief Magistrate Judge Schwab recommended that summary judgment be granted as to Thomas' equal protection and conditions of confinement claims due to his failure to exhaust administrative remedies, and be denied as to Thomas' 42 U.S.C. §§ 1985 and 1986 conspiracy claims because Defendants failed to proffer any argument in favor of summary judgment as to those counts.[12] Over Defendants' objections, this Court adopted the Report and Recommendation.[13]

Defendants thereafter filed a motion to disqualify Sawicki as Thomas' counsel, asserting that Sawicki would need to testify at trial as to the events underlying Thomas' claims, which is prohibited by the Pennsylvania Rules of Professional Conduct.[14] In response, Thomas filed this motion for sanctions.[15] Thomas asserts that "[t]here is no need for testimony by plaintiff's attorney," a fact that he asserts "is well known to defendants and their counsel" and, accordingly, Defendants' motion could only have been filed "to delay and derail these proceedings, harass the undersigned, and vex the Court."[16] Specifically, Thomas

---

[11]   *Id.* at 44-47.
[12]   *Id.* at 26-33, 51.
[13]   Doc. 94.
[14]   Docs. 100, 102.
[15]   Doc. 107. There is no question that Thomas complied with the procedural requirements for filing such a motion, pursuant to Fed. R. Civ. P. 11(c)(2).
[16]   Doc. 110 at 3.

asserts that Sawicki has no plans "to testify at trial, inasmuch as defendants have admitted material facts that suffice to sustain each of the counts remaining in this action."[17] Because Defendants knew that Sawicki would not need to testify at trial, Thomas asserts, sanctions are warranted.[18]

Defendants respond that "[t]here can be no doubt that Plaintiff's counsel was aware that she would be required to testify in this case" given that "[t]he Amended Complaint contained 72 self-references to Plaintiff's counsel, . . . many of them by name."[19] Defendants note that they sought Sawicki's agreement that she would not testify at trial regarding the events at SCI Huntingdon, but she refused to provide such assurances and instead replied simply that she would "obey the Rules of Professional Conduct."[20] Thus, Defendants assert that they attempted, in good faith, to avoid filing the motion to disqualify, but were not offered a satisfactory stipulation that Sawicki would not testify at trial.[21] Accordingly, Defendants assert that sanctions are not warranted.[22]

Thomas has filed a reply brief,[23] and this matter is now ripe for disposition. For the following reasons, Thomas' motion will be denied.

---

[17]   *Id.* at 8. Although Sawicki asserts that she has no need to testify at trial, she simultaneously explains that she could testify regarding damages and "read the admitted facts to the jury and explain them." *Id.* at 9, 10.
[18]   *Id.* at 8-13.
[19]   Doc. 111 at 3.
[20]   *Id.* at 4; Doc. 111-2 at 2.
[21]   Doc. 111 at 5-7.
[22]   *Id.*
[23]   Doc. 112.

## II.    DISCUSSION

Federal Rule of Civil Procedure 11 provides that a party may be sanctioned if, *inter alia*, a motion is "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."[24] In ruling on a motion for sanctions, "[a] district court must determine whether the attorney's conduct was objectively reasonable under the circumstances."[25] "[R]easonableness [under the circumstances is] defined as an objective knowledge or belief at the time of the filing of a challenged paper that the claim was well-grounded in law and fact."[26] Thus, "[s]anctions are to be applied only in the exceptional circumstance where a claim or motion is patently unmeritorious or frivolous."[27]

The United States Court of Appeals for the Third Circuit has

explained that the standard under Rule 11 is stringent because sanctions 1) are in derogation of the general American policy of encouraging resort to the courts for peaceful resolution of disputes, 2) tend to spawn satellite litigation counter-productive to efficient disposition of cases, and 3) increase tensions among the litigating bar and between the bench and the bar.[28]

"Rule 11's primary purpose is not wholesale fee shifting but rather correction of litigation abuse."[29] Accordingly, "the imposition of sanctions for a Rule 11 violation

---

[24]   Fed. R. Civ. P. 11(b)(1), (c).

[25]   *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277, 297 (3d Cir. 2010) (internal quotation marks omitted).

[26]   *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 289 (3d Cir. 1991) (citations and internal quotations omitted)

[27]   *Ario*, 618 F.3d at 297 (internal quotation marks omitted).

[28]   *Moeck v. Pleasant Valley Sch. Dist.*, 844 F.3d 387, 391 n.7 (3d Cir. 2016) (brackets and internal quotation marks omitted).

[29]   *Id.* (brackets and internal quotation marks omitted).

is discretionary rather than mandatory."[30] Finally, courts have emphasized that "[i]n deciding a Rule 11 motion, 'any doubt should be resolved in favor of the party charged with the violation.'"[31]

Here, it is clear that Defendants had a good faith basis to believe that their motion to disqualify Sawicki was "well-grounded in law and fact."[32] As Defendants rightly note, Thomas' amended complaint is replete with references to Sawicki, who was involved in nearly every notable event that occurred within SCI Huntingdon that is relevant to this matter.[33] This gave Defendants concern—for obvious reason—that Sawicki would need to testify at trial to help establish the facts that underlie Thomas' claims.

Moreover, Defendants had good reason to believe that Sawicki should be prohibited from testifying at trial. The Pennsylvania Rules of Professional Conduct provide that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness."[34] The only exceptions to that rule are instances where such testimony relates to an uncontested issue or the nature and value of legal services rendered in the case, or if "disqualification of the lawyer would work

---

[30] *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 146 n.28 (3d Cir. 2009).

[31] *Verify Smart Corp., v. Bank of Am., N.A.*, No. CV 17-4248, 2020 WL 3542430, at *7 (D.N.J. June 29, 2020) (quoting *Sanders v. Hale Fire Pump Co.*, No. 87-2468, 1988 WL 58966, at *1 (E.D. Pa. June 1, 1988) (brackets and ellipsis omitted)).

[32] *Ford Motor Co.*, 930 F.2d at 289.

[33] *See* Doc. 21.

[34] 204 Pa. Code § 81.4, Rule 3.7(a).

substantial hardship on the client."[35] Given this rule, Defendants could reasonably have concluded that any testimony that Sawicki may offer that relates to the events that occurred at SCI Huntingdon would be improper. Sawicki offers two unconvincing responses to this concern.

First, she asserts that her testimony is not required because portions of the amended complaint were deemed admitted, and those portions establish Defendants' liability as a matter of law. This is incorrect, as Thomas' claims are not established by the admissions alone, and the remaining issues could compel Sawicki to offer testimony at trial.

As to Thomas' freedom of speech and association claims, a prison rule that "impinges on inmates' constitutional rights, . . . is valid if it is reasonably related to legitimate penological interests."[36] The burden rests with Defendants to put forward a "legitimate governmental interest alleged to justify the regulation . . . and demonstrate that [Defendants] could rationally have seen a connection between the policy and that interest."[37] However, "[i]f such a rational relationship is found to exist," the burden would then shift to Thomas to show that Defendants' actions or rules were unreasonable.[38]

---

[35] *Id.*

[36] *Turner v. Safley*, 482 U.S. 78, 89 (1987).

[37] *Jones v. Brown*, 461 F.3d 353, 360 (3d Cir. 2006) (citation and internal quotation marks omitted).

[38] *Id.*

At the summary judgment stage, Defendants asserted that their actions were rationally related to their interest in the safety and security of SCI Huntingdon. It is beyond peradventure that prisons have "a 'substantial interest' in institutional security."[39] Despite this legitimate interest, the Court denied summary judgment because Defendants failed to proffer evidence in their summary judgment motion that connected their actions with that legitimate penological interest.[40] This does not mean that Defendants' liability is established as a matter of law, since it was Defendants—and only Defendants—who moved for summary judgment; it merely means that Defendants must now establish that legitimate interest at trial, and convince a jury that they "could rationally have seen a connection between [their actions] and that interest."[41]

It is clear from deposition testimony that Defendants viewed Sawicki as a potential security threat because they believed she may have been passing contraband to Thomas and was physically touching and kissing Thomas. Defendants will, therefore, need to offer evidence related to those concerns at trial if they hope to meet their burden of proof. Notably, none of Defendants' admissions counter or contradict any such belief. Defendants understandably could believe that, in an effort to counter evidence that they may proffer relating to Sawicki's actions, Sawicki would need to testify that she was not a security threat and did not perform the

---

[39]   *Id.* at 361 (quoting *Bieregu v. Reno*, 59 F.3d 1445, 1458 (3d Cir. 1995)).
[40]   *See* Doc. 87 at 45-46.
[41]   *Jones*, 461 F.3d at 360 (citation and internal quotation marks omitted).

actions of which Defendants accuse her. Although Thomas could attempt to counter Defendants' evidence with his testimony alone, that would seem a risky strategy, and it certainly is reasonable for Defendants to believe that Sawicki will also offer testimony at trial.

Similarly, with regard to Thomas' access to courts claim, it is well established that "[u]nder the First and Fourteenth Amendments, prisoners retain a right of access to the courts."[42] To establish this claim at trial, Thomas "must show (1) that [he] suffered an 'actual injury'—that [he] lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that [he] ha[s] no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit."[43] Neither of these elements would at first blush seem to require Sawicki to testify.[44]

Critically, however, as Chief Judge Schwab recognized in her Report and Recommendation, "this right does not entail unfettered or totally unrestricted visitation with counsel, for it must yield to legitimate penological interests."[45] It thus seems likely, as detailed above, that Defendants will seek to submit evidence and testimony to establish that they had a legitimate penological interest in taking actions

---

[42] *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008).

[43] *Id.*

[44] Notably, none of Defendants' admissions establish either element of Thomas' access to courts claim.

[45] *Thomas v. Duvall*, No. 3:16-CV-00451, 2019 WL 8013742, at *14 (M.D. Pa. Oct. 3, 2019) (quoting *Lane v. Tavares*, No. 3:14-CV-00991, 2015 WL 435003, at *8 (M.D. Pa. Feb. 3, 2015)).

that disrupted—to some extent—Thomas' ability to meet privately with Sawicki, due to the security threat that Sawicki posed. Again, none of the admissions would contradict any such assertion by Defendants, and Sawicki may need to offer testimony to counter that narrative. Consequently, Defendants had good reason to believe that the motion to disqualify was necessary and supported by both the law and the facts of this case.

Second, Thomas claims that Sawicki may testify to some limited matters,[46] and that Sawicki offered to "stipulate that I obey the Rules of Professional Conduct."[47] However, Defendants had good cause to be concerned that any trial testimony may exceed permissible bounds. Thomas correctly notes that an attorney may offer testimony that relates to an uncontested issue or to the nature and value of legal services rendered in the case.[48] However, his view and Sawicki's view of the breadth of those exceptions to the prohibition on attorney testimony appears unfounded.

Thomas[49] asserts that "Rule 3.7 permits counsel to read the admitted facts to the jury and explain them, inasmuch as those facts are uncontested as a matter of law because the Court declared them admitted."[50] The key words that give the Court

---

[46] Doc. 110 at 9-10.

[47] Doc. 111-2 at 2.

[48] 204 Pa. Code § 81.4, Rule 3.7(a).

[49] The arguments and assertions contained in Thomas' brief are quite obviously those of his attorney who signed and filed the brief on Thomas' behalf. Accordingly, the Court attributes the assertions made therein to both Thomas and Sawicki.

[50] Doc. 110 at 10.

pause are "and explain them." Nothing in Rule 3.7 permits an attorney to testify to uncontested matters and then proceed beyond those uncontested matters to "explain them" to a jury.

This case provides a perfect example of why explaining uncontested facts would exceed the exception provided in Rule 3.7. Altogether, only 35 out of 159 paragraphs of the amended complaint[51] were deemed admitted.[52] Collectively, the admitted paragraphs form a largely incoherent jumble of facts that a jury would likely have great difficulty untangling without testimonial assistance. To make sense of these admissions, it seems highly likely that Sawicki would need to provide factual background to place these admissions into context.

For example, admitted paragraph 83 of the amended complaint reads "[a]s a compromise, Smith placed Thomas and his attorney on either side of a glass wall in a non-contact booth, and Smith ordered Duvall and Matthew Ritchey to carry papers back and forth between the attorney and Thomas."[53] This would raise the obvious and natural question: a compromise to what? This is answered by the information contained in paragraphs 81 and 82. While paragraph 81 was deemed admitted, paragraph 82 was not and, thus, "explaining" the information contained in paragraph 83 would necessarily go beyond the uncontested facts.

---

[51]   192 paragraphs, if including paragraphs related to the causes of action.
[52]   *See* Doc. 21, Doc. 87 at 20.
[53]   Doc. 21 at 22.

Similarly, paragraph 93 states that "Duvall ordered a prisoner-worker, Edward Schleigh, to enter non-contact booth #3 to retrieve and dispose of the contraband. Inmate Schleigh carried a dustpan and broom into non-contact booth #3 to clean it."[54] This again begs for further explanation—what contraband, and who placed the contraband in the booth? This would again require additional testimony that goes beyond the admissions and, since Sawicki—not Thomas—allegedly discovered the contraband, she alone would be able to provide that additional information.

Thus, explaining the admissions would require testimony from Sawicki that necessarily goes beyond the uncontested issues. In light of this, it is understandable that Sawicki's offer to follow Pennsylvania Rules of Professional Responsibility would not necessarily alleviate Defendants' concern, as her view of the conduct permitted by those Rules appears expansive. Because any doubts here must be resolved in favor of Defendants,[55] the Court concludes that Defendants' motion to disqualify Sawicki was made with an "objective . . . belief at the time of the filing of a challenged paper that the claim was well-grounded in law and fact."[56] Accordingly, Thomas' motion for sanctions must be denied.

---

[54] *Id.* at 23.
[55] *Verify Smart Corp.*, 2020 WL 3542430 at *7.
[56] *Ford Motor Co.*, 930 F.2d at 289.

## III.    CONCLUSION

The Court concludes that Defendants' motion to disqualify is well-grounded in law and fact. Consequently, the Court will deny Thomas' motion for sanctions.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge