IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANGEL LUIS THOMAS, | No. 3:16-CV-00451 |
| Plaintiff, | (Judge Brann) |
| v. | |
| ANGELA R. DUVALL, *et al.*, | |
| Defendants. | |

MEMORANDUM OPINION

NOVEMBER 17, 2020

I.  BACKGROUND

Angel Luis Thomas, formerly a Pennsylvania state prisoner confined at the State Correctional Institution in Huntingdon, Pennsylvania ("SCI Huntingdon"), filed this amended civil rights complaint alleging that numerous prison officials violated his Constitutional rights.[1] Thomas raised several claims including, as relevant here, claims that Defendants interfered with his access to courts and with his rights of free speech, association, and privacy.[2] The events underlying these claims involve, to a significant degree, Thomas' attorney, Marianne Sawicki, Esq.[3]

In October 2019, Chief Magistrate Judge Susan E. Schwab issued a Report and Recommendation recommending that this Court grant in part and deny in part

---
[1]  Doc. 21.
[2]  *Id.*
[3]  *Id.*

Defendants' motion for summary judgment.[4] First, Chief Magistrate Judge Schwab recommended finding that Defendants had admitted certain facts in Thomas' amended complaint by failing to properly deny those allegations, as required by Federal Rule of Civil Procedure 8(b).[5] Specifically, she recommended that "the factual allegations in Paragraphs 37-39, 45, 59, 72, 74-76, 81, 83-84, 86-87, 90-91, 93-97, 100, 108-111, 114-115, 118-120, 122, 126, and 133-134 of the amended complaint [be] deemed admitted for the defendants' failure to deny them."[6]

With regard to Thomas' access to courts claim, Chief Magistrate Judge Schwab determined that this claim should survive summary judgment, as several admitted allegations supported Thomas' claim.[7] Specifically, two prison officials "made Thomas and Sawicki meet in the middle of the visiting room and then refused to carry papers back and forth between them after [they were] placed . . . on either side of a glass wall."[8] Additionally, Defendants "required Thomas and Sawicki to meet in a non-contact booth with inoperative phones, causing them to have to shout and allowing other inmates to hear their conversation."[9] The sum of these admitted facts "could establish that [Defendants] interfered with Thomas's ability to visit with his attorney."[10]

---

[4] Doc. 87.
[5] *Id.* at 16-21.
[6] *Id.* at 20.
[7] *Id.* at 38-43.
[8] *Id.*
[9] *Id.*
[10] *Id.* at 43.

2

As to Thomas' freedom of speech and association claims, Chief Magistrate Judge Schwab recommended that summary judgment be denied, as Defendants failed to demonstrate a rational connection between their actions and any legitimate penological interest.[11] Chief Magistrate Judge Schwab recommended that summary judgment be granted as to Thomas' equal protection and conditions of confinement claims due to his failure to exhaust administrative remedies, and be denied as to Thomas' 42 U.S.C. §§ 1985 and 1986 conspiracy claims because Defendants failed to proffer any argument in favor of summary judgment as to those counts.[12] Over Defendants' objections, this Court adopted the Report and Recommendation.[13]

Defendants thereafter filed a motion to disqualify Sawicki as Thomas' counsel at trial, asserting that Sawicki would likely need to testify at trial as to the events underlying Thomas' claims, which is prohibited by the Pennsylvania Rules of Professional Conduct.[14] Specifically, Defendants assert that Sawicki was involved in many of the events underlying Thomas' claims—and for some of the events is Thomas' only witness—and, thus, she will likely need to testify at trial.[15]

---

[11] *Id.* at 44-47.
[12] *Id.* at 26-33, 51.
[13] Doc. 94.
[14] Docs. 100, 102. Thomas thereafter filed a motion for sanctions, which this Court denied, and a subsequent motion for reconsideration of the denial of sanctions, which was also denied. Docs. 107, 114, 115, 116, 125, 126.
[15] Doc. 102.

Thomas responds in several ways. First, he argues that the motion must be denied because Sawicki need not testify at trial to establish Defendants' liability.[16] Rather, Thomas asserts, Defendants have "admit[ed] every pertinent fact of which plaintiff's counsel has personal knowledge," and therefore Sawicki does not need to testify at trial to establish the elements of Thomas' causes of action.[17] Thomas further contends that, simply because Sawicki would not "give away [the] option[ to testify], by stipulation far in advance of trial, cannot be construed as an affirmative declaration of intent to testify at trial," particularly where Sawicki denies that she will need to testify.[18]

Second, Thomas contends that the Pennsylvania Rules of Professional Conduct do not permit the preemptive disqualification of counsel and may only be used to punish counsel after a violation of those Rules.[19] Third, Thomas asserts that disqualification is improper because Sawicki is permitted to testify with respect to uncontested issues, and because disqualification would work a substantial hardship on him.[20] Lastly, Thomas asserts that the motion to disqualify should be denied because it was filed only to make Sawicki available as a witness for the defense.[21]

---

[16] *See* Doc. 118.
[17] *Id.* at 5; *see id.* at 6-8.
[18] *Id.* at 7-8.
[19] *Id.* at 8-9.
[20] *Id.* at 9-12.
[21] *Id.* at 12-13.

Defendants have filed a reply brief,[22] and this matter is now ripe for disposition. For the following reasons, Defendants' motion will be conditionally granted.

## II.  DISCUSSION

Federal courts maintain an "inherent power to supervise attorney conduct" when an attorney appears before the court.[23] This inherent authority includes the "power to disqualify an attorney"[24] where necessary, although "a district court must ensure that there is an adequate factual predicate for flexing its substantial muscle under its inherent powers."[25] Moreover, courts must be cautious when considering a motion to disqualify counsel, as such motions "are generally disfavored."[26] Thus, "[t]he party seeking disqualification must clearly show that continued representation would be impermissible . . . [and, a]s such, vague and unsupported allegations are not sufficient to meet this standard."[27]

### A.   Whether Sawicki is Likely a Necessary Witness

Here, Defendants seek to disqualify Sawicki as trial counsel pursuant to the operation of Pennsylvania Rule of Professional Conduct 3.7, which provides that:

> A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of

---

[22] Doc. 120.
[23] *Saldana v. Kmart Corp.*, 260 F.3d 228, 235 (3d Cir. 2001).
[24] *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980).
[25] *Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 (3d Cir. 1994).
[26] *Conley v. Chaffinch*, 431 F. Supp. 2d 494, 496 (D. Del. 2006).
[27] *Id.* (brackets and internal quotation marks omitted).

> legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client.[28]

Courts have emphasized that disqualification rules are designed "to prevent a situation where an attorney is forced to act as both an attorney and witness during a trial, thus 'creating the danger that the fact finder . . . may confuse what is testimony and what is argument, and otherwise creating an unseemly appearance at trial.'"[29]

As the language of Rule 3.7 makes clear, attorneys may only be disqualified from trial advocacy if they are "likely to be a necessary witness."[30] "In order for a witness to be deemed necessary, [s]he must have 'crucial information' in h[er] possession which must be divulged."[31] "Evidence in the possession of a witness which is cumulative or obtainable elsewhere will not be deemed necessary."[32] Thus, "an attorney's testimony is considered truly necessary [only] if there are no documents or other witnesses that can be used to introduce the relevant evidence."[33]

Here, it is apparent that Sawicki will likely be a necessary witness at trial. As this Court discussed in its July 7, 2020 Memorandum Opinion denying Thomas' motion for sanctions,[34] Sawicki was involved in nearly every notable event that

---

[28] 204 Pa. Code § 81.4, Rule 3.7(a).
[29] *Residences at Bay Point Condo. Assoc., Inc. v. Chernoff Diamond & Co., LLC*, No. CV165190MCAMAH, 2017 WL 3531683, at *13 (D.N.J. Aug. 17, 2017) (quoting *Main Events Prods., LLC v. Lacy*, 220 F.Supp.2d 353, 357 (D.N.J. 2002)).
[30] 204 Pa. Code § 81.4, Rule 3.7(a).
[31] *Aamco Transmissions, Inc. v. Baker*, No. CIV.A. 06-5252, 2008 WL 509220, at *3 (E.D. Pa. Feb. 25, 2008) (quoting *Commercial Credit Bus. Loans v. Martin,* 590 F.Supp. 328, 335 (E.D. Pa. 1984)).
[32] *Id.* (internal quotation marks omitted).
[33] *Residences at Bay Point Condo. Assoc., Inc.*, 2017 WL 3531683, at *13.
[34] Doc. 114 at 6-10.

6

occurred within SCI Huntingdon that is relevant to Thomas' amended complaint.[35] In several instances, Sawicki was the only witness to those events.[36] Much of the information that is solely in Sawicki's possession is crucial to Thomas' underlying claims, and relates to, *inter alia*, allegations that: Defendants conspired to frame Sawicki by planting contraband; Defendants' actions intimidated and frightened Sawicki and could have led to her disbarment, which would have deprived Thomas of his chosen attorney; Defendants refused to provide a renovated non-contact room for Thomas and Sawicki; and Defendants threatened Sawicki in an attempt to discourage her continued representation of Thomas in his preparation for upcoming testimony.[37] All of these facts constitute crucial information in support of Thomas' claims and, as just noted, since Sawicki was the only witness to many of these events, her testimony would not be cumulative, and could not be obtained elsewise.

Furthermore, should Thomas establish at trial that his rights were impinged upon, at least two of his claims are subject to rebuttal from the defense. Even if Thomas establishes that Defendants infringed upon his freedom of speech and association, and/or right of access to the courts, Defendants may still offer evidence

---

[35] *See* Doc. 21.
[36] *See id.* at ¶¶ 92, 98, 108, 125, 139. Additionally, there were several instances where Sawicki was the only Plaintiff's witness to the events and, if Defendants contradict Thomas' version of events, Sawicki would be the only witness who could or would contradict Defendants' testimony. *See id.* at ¶¶ 82, 85, 116-17, 123-24, 142. The Court notes that these citations exclude any paragraphs that have been deemed admitted by operation of Defendants' failure to properly contest them.
[37] *Id.*

to establish that their actions were guided by a legitimate governmental interest, and that there was a rational connection between their actions and that interest.[38]

As this Court has previously explained, Defendants have proffered a legitimate governmental interest as the basis for restricting Thomas' freedom of speech and association, and assert that they were concerned that Sawicki potentially posed a security threat.[39] These concerns emanated at least in part from Sawicki's habit of purchasing food for her clients and hugging and kissing her clients when she greeted them, which led prison officials to believe that she may be attempting to smuggle contraband to those prisoners.[40] Should Defendants meet their burden at trial, Thomas would be required to establish that Defendants' actions or rules were unreasonable.[41]

This would likely require that Sawicki testify to either deny that she took any such action or give context to her actions, explain why she took them, and why they were innocuous. Sawicki, and Sawicki alone, is capable of providing such testimony.[42] Because the testimony that Sawicki may offer would not be cumulative

---

[38] *See Jones v. Brown*, 461 F.3d 353, 360 (3d Cir. 2006) (for freedom of speech and association claims, prison may justify impinging on constitutional rights by establishing a "legitimate governmental interest alleged to justify the regulation . . . and demonstrat[ing] that [Defendants] could rationally have seen a connection between the policy and that interest" (citation and internal quotation marks omitted)); *Thomas v. Duvall*, No. 3:16-CV-00451, 2019 WL 8013742, at *14 (right of access to counsel "must yield to legitimate penological interests" (internal quotation marks omitted)).

[39] Doc. 114 at 8.

[40] *See* Doc. 68-7 at 56, 59-61, 78-79, 89-90, 97, 122-29.

[41] *Jones*, 461 F.3d at 360.

[42] Although the inmates whom Sawicki visited could explain that these actions were, in their experience, normal, they could not explain that it was normal for Sawicki to behave in that

8

and could not be obtained by other means, the Court concludes that she is likely a necessary witness as contemplated by Pennsylvania Rule of Professional Conduct 3.7.[43]

Thomas nevertheless argues that Sawicki should not be disqualified as counsel because Defendants have admitted all necessary facts to establish his claims, and because Sawicki's decision not to testify must be respected. As to Thomas' assertion that Defendants have admitted all the necessary facts to establish his claims and, therefore, no testimony from Sawicki is required at trial,[44] as discussed above—and in some detail in the Court's July 7, 2020 Memorandum Opinion—the 35 admitted paragraphs simply do not establish the elements of Thomas' causes of action.[45]

Thomas tries to avoid this inconvenient truth by asserting that numerous additional paragraphs have been admitted by Defendants by operation of the Federal Rules of Civil Procedure, despite the fact that this Court never deemed any additional paragraphs admitted. Chief Magistrate Judge Susan W. Schwab's Report and Recommendation was clear that "numerous . . . paragraphs f[e]ll well short of what is required by [Federal Rule of Civil Procedure] 8" and elaborated that

---

manner with all of her clients, nor could they provide context to Sawicki's actions. Moreover, it is not clear that all, or any, of these individuals would be able to testify at trial.
[43] *See Roberts v. Ferman*, No. CIV.A. 09-4895, 2011 WL 4381128, at *3 (E.D. Pa. Sept. 16, 2011) (attorney was necessary witness where he had directly participated in events underlying one claim and no other source of evidence was available).
[44] Doc. 118 at 6-8.
[45] Doc. 114 at 6-10.

"[s]pecifically, we find the defendants' responses to the factual allegations in paragraphs 37-39, 45, 59, 72, 74-76, 81, 83-84, 86-87, 90-91, 93-97, 100, 108-111, 114-115, 118-120, 122, 126, and 133-134 insufficient under Rule 8(b)."[46] Contrary to Thomas' contention, this was an exhaustive list of the paragraphs of the amended complaint that were deemed admitted, and no rule or caselaw permits Thomas to simply claim additional paragraphs admitted. That is not how federal practice or the Federal Rules of Civil Procedure work, and for good reason.

Due process demands that parties be given notice and an opportunity to respond when a right or defense may be forfeited, and Thomas' proposed rule would undermine this sacred right. Moreover, his proposed rule would fundamentally undercut 28 U.S.C. § 636, which governs matters referred to magistrate judges and permits objections to report and recommendations.[47] Litigants are strongly encouraged to file objections because the filing of specific objections "preserves the district court's role as the primary supervisor of magistrate judges,"[48] and "promotes the effectiveness and efficiency of the lower courts by compelling parties to promptly contest dispositive issues before the magistrate judge and district judge."[49] In other words, requiring specific objections "conserves judicial resources by training the attention of both the district court and the court of appeals upon only

---

[46] Doc. 87 at 18 & n.6.
[47] *See Nara v. Frank*, 488 F.3d 187, 196 (3d Cir. 2007) (issues are reviewed only for plain error where party fails to file timely objections).
[48] *United States v. Midgette*, 478 F.3d 616, 621 (4th Cir. 2007).
[49] *Nara*, 488 F.3d at 196.

those issues that remain in dispute after the magistrate judge has made findings and recommendations."[50] But plainly these goals would not be accomplished under Thomas' theory—Defendants cannot object to a recommendation that the magistrate judge did not make, and the district court's attention cannot be trained on a disputed issue when neither the parties nor the court know that an issue is in dispute.

The Court is unable to locate any authority to support Thomas' assertion that paragraphs of a complaint are deemed admitted under Rule 8 even absent a court order, and Thomas points to none.[51] More importantly, however, by specifically delineating the paragraphs that it deemed admitted, this Court simultaneously determined that the remaining paragraphs in the amended complaint were not admitted by Defendants. Accordingly, only 35 paragraphs have been deemed admitted—no more and no less—and Sawicki remains a necessary witness, notwithstanding the fact that certain paragraphs in the amended complaint are deemed admitted.

As to Thomas' contention that Sawicki's statement that she will not testify must be respected, such argument does not defeat Defendants' motion for two reasons. First, Thomas' response brief is replete with inconsistent assertions

---

[50] *Midgette*, 478 F.3d at 621.
[51] To the contrary, the Federal Rules of Civil Procedure are not self-executing, but must instead be enforced by the courts. Thus, the United States Supreme Court long ago noted that the "Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome," *Conley v. Gibson,* 355 U.S. 41, 48 (1957), and innumerable courts have held that noncompliance with Rule 8(b)(6) may be excused in some circumstances. *See, e.g., Edelman v. Belco Title & Escrow, LLC*, 754 F.3d 389, 394-95 (7th Cir. 2014).

11

regarding whether Sawicki will testify at trial. While Sawicki at times "emphatically denies" that she will testify at trial,[52] she simultaneously asserts that she may testify at trial and is "reluctan[t] . . . to give away options, by stipulation far in advance of trial."[53] These inconsistencies undermine Thomas' contention that Sawicki's refusal to testify must be acknowledged and respected for purposes of this motion.[54]

Second, Pennsylvania Rule of Professional Conduct 3.7 does not require that an attorney will *certainly* be a necessary witness, only that she "is *likely* to be a necessary witness."[55] As detailed above, despite her denials of any intent to testify, Sawicki is likely to be a necessary witness at trial—even if it is not certain that she will testify. This is especially true given the strong indications that Sawicki is at least contemplating testifying at trial. Accordingly, Sawicki's inconsistent denials regarding any intent to testify at trial do not undercut her status as a necessary witness.

### B.    Whether any Exception to Rule 3.7 Applies

Despite her status as a necessary witness, Sawicki may represent Thomas at trial if (1) any testimony that she may offer relates to an uncontested issue or to the nature and value of legal services rendered in the case, or (2) her disqualification

---

[52]   Doc. 118 at 8; *see id.* at 3, 5.
[53]   *Id.* at 7-8; *see id.* at 5, 10, 11.
[54]   Although Thomas asserts that Sawicki may testify to certain matters, as discussed below this does not negate the valid reasons that exist to grant Defendants' motion.
[55]   204 Pa. Code § 81.4, Rule 3.7(a) (emphasis added).

"would work substantial hardship on [Thomas]."[56] Thomas argues that Sawicki should not be disqualified for four reasons. First, he contends that the Pennsylvania Rules of Professional Conduct may not be applied prophylactically.[57] Second, he argues that Sawicki may testify about uncontested matters and, due to the nature of Defendants' admissions, this encompasses nearly every relevant event that occurred at SCI Huntingdon.[58] Third, Thomas asserts that disqualification would work a substantial hardship on him, as he likely cannot find replacement counsel.[59] Finally, Thomas argues that the motion to disqualify was filed only to make Sawicki available as a witness for the defense and should therefore be denied.[60]

As to Thomas' first argument, this Court has previously rejected any assertion that Pennsylvania Rule of Professional Conduct 3.7 may not be applied to preemptively disqualify an attorney from acting as an advocate at a trial in which she is likely a necessary witness.[61] The Court previously noted that the language of the Rule indicates that it may be applied prior to trial, and that numerous courts have applied the Rule to preemptively disqualify an attorney from acting as counsel at a trial in which she is likely to be a necessary witness.[62] Thomas points to no authority that undermines this conclusion and, accordingly, the Court again rejects Thomas'

---

[56] *Id.*
[57] Doc. 118 at 8-9.
[58] *Id.* at 9-10.
[59] *Id.* at 9.
[60] *Id.* at 12-13.
[61] Doc. 125 at 8 n.37.
[62] *Id.* (citing *United States v. Santiago*, 916 F. Supp. 2d 602, 618-19 (E.D. Pa. 2013)

13

contention that Pennsylvania Rule of Professional Conduct 3.7 may not apply prophylactically.[63]

Thomas' argument that Sawicki may testify about uncontested matters and that, due to the nature of Defendants' admissions, this encompasses nearly every relevant event that occurred at SCI Huntingdon,[64] fails for two reasons. First, as this Court explained in some detail in its July 7, 2020 Memorandum Opinion, Thomas' assertion that Sawicki may testify and "explain" Defendants' admissions is erroneous, as such testimony would go well beyond the admissions and, thus, beyond the uncontested matters in this case.[65] Second, Thomas himself asserts that "controlling precedent . . . bars admission of further evidence of facts" to support allegations that have already been admitted.[66] If this is so, Sawicki could not possibly offer testimony related to the admissions in this matter and, in any event, testimony related to the admissions would almost certainly be duplicative.

With respect to Thomas' contention that disqualifying Sawicki would work a substantial hardship on him, as he likely cannot find replacement counsel,[67] Sawicki herself has undermined any such assertion. During a January 10, 2020 telephonic

---

[63] Moreover, acting only after Rule 3.7 has been violated would not further the Rule's goals of eliminating confusion amongst the jury regarding "what is testimony and what is argument," and eliminating "an unseemly appearance at trial." *Residences at Bay Point Condo. Assoc., Inc.*, 2017 WL 3531683, at *13.
[64] *Id.* at 9-10.
[65] Doc. 114 at 10-12.
[66] Doc. 118 at 8.
[67] *Id.* at 9.

status conference call, the Court noted its concern that, given her involvement in the events underlying Thomas' amended complaint, Sawicki may need to testify at trial, which would mean that she would likely be unable to advocate on Thomas' behalf. In response, Sawicki asserted that she would not need to testify at trial, but also explicitly informed the Court that replacement counsel, Kathleen Yurchak, Esq., would be able to act as counsel at trial if necessary. Because replacement counsel is apparently available, and trial has not yet been set in this matter, the Court cannot conclude that disqualifying Sawicki would work a substantial hardship on Thomas.

Finally, Thomas argues that Defendants have filed this motion for the sole purpose of disqualifying Sawicki so that they may call her as a witness and impeach her regarding facts that they have already admitted.[68] Not only does Thomas fail to provide any evidence whatsoever to support this outlandish assertion, but such a gambit by Defendants—attempting to undermine facts to which they have already admitted—would be improper and would not be permitted by the Court.

In sum, the Court finds that Sawicki is likely a necessary witness, and no exceptions would permit her to act as an advocate on Thomas' behalf at trial. The Court will therefore conditionally disqualify Sawicki from acting as Thomas' attorney at trial.[69] Importantly, however, Sawicki is not prohibited from representing

---

[68] Doc. 118 at 12-13.
[69] The Court will reconsider this ruling should Sawicki stipulate that she will not testify at trial regarding the relevant events that occurred at SCI Huntingdon.

Thomas up to the date of trial and again upon the conclusion of trial, should further representation be required.[70]

### C. Sawicki's Conduct in Opposing Defendants' Motion

Lastly, the Court finds it necessary to address some of the language used by Sawicki in her advocacy before this Court. Sawicki makes several unfounded and unseemly accusations that are unbecoming of an attorney admitted to practice before this Court.

Amongst the most egregious of Sawicki's statements is her assertion that Defendants "are *still* working together with one another and now with another state employee—their counsel—to violate Thomas's First Amendment rights. This conspiracy is something that the Court must not enable, much less join, by granting the motion to disqualify."[71] It is one thing, and certainly proper, to allege that prison officials engaged in a conspiracy to deny Thomas his civil rights, but it is another

---

[70] *See Thompson v. Commonwealth of Pa. State of Police*, No. 1:13-CV-02301, 2014 WL 6982634, at *2 (M.D. Pa. Dec. 10, 2014) ("Several courts and at least one Pennsylvania Bar Association committee have observed that Rule 3.7 regulates only *trial* conduct, and have uniformly found pre-trial practice to be beyond the rule's scope"); *Roberts*, 2011 WL 4381128, at *3 (holding "Rule 3.7 of Pennsylvania's Rules of Professional Conduct does not prohibit an attorney from continuing to *represent* a client in cases where the attorney may be called as a necessary witness; rather, the rule simply prevents the attorney from acting as an advocate *at trial* in such a case" and, thus, the attorney "may participate in any further pre-trial matters and any post-trial matters on behalf of Plaintiff, and he may continue to use his knowledge of the facts and background of the case to direct preparation and strategy prior to the actual date of trial").

[71] Doc. 118 at 13; *see id.* at 5 ("The Court should decline the defendants' invitation to join their conspiracy to deprive the plaintiff of his counsel"); *id.* at 7 ("the Motion to Disqualify is just another iteration of defendants' long-running concerted effort to deprive the plaintiff of rights guaranteed by the Petition Clause of the First Amendment").

thing entirely to suggest that the Office of the Attorney General of Pennsylvania and its representative—an officer of the court who is held to the highest ethical standards—has joined in that conspiracy through his advocacy before this Court. And it is something altogether different, and highly unacceptable, to brazenly assert that this Court would knowingly join a conspiracy to deprive Thomas of his constitutional rights by ruling against him in this motion.

It should go without saying that this Court has not, is not, and will never conspire to deprive any individual of his constitutional rights. Sawicki's unfounded and untrue statement that the Attorney General and this Court are conspiring against Thomas is beyond the pale. This is behavior that the Court would perhaps expect from a *pro se* litigant lashing out at perceived injustices and protesting decisions that he or she does not like. It is, however, entirely unacceptable coming from a member of the bar and an officer of the court.

In addition to that baseless accusation, Sawicki also accuses defense counsel of engaging in "bullying" behavior by seeking a stipulation that she would not offer testimony regarding certain matters, and by filing a motion to disqualify when she would not agree to enter such a stipulation.[72] The Court sees no improper or bullying conduct in defense counsel's actions. The Court expects litigants who appear before it to comport themselves with dignity and treat opposing counsel with respect. The

---

[72] *Id.* at 10, 12.

Court is disappointed that such a reminder is necessary, but Sawicki's behavior warrants such an admonition. All parties should endeavor to conduct themselves in an appropriate manner in all future matters before this Court.

## III. CONCLUSION

In sum, the Court concludes that Sawicki is likely to be a necessary witness and, accordingly, Defendants' motion to disqualify her as counsel at trial will be conditionally granted.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge
