**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANGEL LUIS THOMAS, | No. 3:16-CV-00451 |
| Plaintiff, | (Judge Brann) |
| v. | |
| ANGELA R. DUVALL, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**

**APRIL 1, 2021**

## I.    BACKGROUND

Angel Luis Thomas, formerly a Pennsylvania state prisoner confined at the State Correctional Institution in Huntingdon, Pennsylvania ("SCI Huntingdon"), filed this amended civil rights complaint alleging that numerous prison officials violated his Constitutional rights.[1] Thomas raised several claims including, as relevant here, claims that Defendants interfered with his right of access to courts and with his rights of free speech, association, and privacy, conspired to deprive Thomas of those constitutional rights, and conspired to interfere with Thomas' ability to testify in federal court.[2]

In October 2019, Magistrate Judge Susan E. Schwab issued a Report and Recommendation recommending that this Court grant in part and deny in part

---

[1]    Doc. 21.
[2]    *Id.*

Defendants' motion for summary judgment.[3] First, Magistrate Judge Schwab recommended finding that Defendants had admitted certain factual allegations in Thomas' amended complaint by failing to properly deny those allegations, as required by Federal Rule of Civil Procedure 8(b)(6).[4] Specifically, she recommended that "the factual allegations in Paragraphs 37-39, 45, 59, 72, 74-76, 81, 83-84, 86-87, 90-91, 93-97, 100, 108-111, 114-115, 118-120, 122, 126, and 133-134 of the amended complaint [be] deemed admitted for the defendants' failure to deny them."[5]

With regard to Thomas' access to courts claim, Magistrate Judge Schwab determined that this claim should survive summary judgment, as several admitted allegations supported Thomas' claim.[6] Specifically, two prison officials "made Thomas and Sawicki meet in the middle of the visiting room and then refused to carry papers back and forth between them after [they were] placed . . . on either side of a glass wall."[7] Additionally, Defendants "required Thomas and Sawicki to meet in a non-contact booth with inoperative phones, causing them to have to shout and allowing other inmates to hear their conversation."[8] The sum of these admitted facts "could establish that [Defendants] interfered with Thomas's ability to visit with his attorney."[9]

---

[3]   Doc. 87.
[4]   *Id.* at 16-21.
[5]   *Id.* at 20.
[6]   *Id.* at 38-43.
[7]   *Id.*
[8]   *Id.*
[9]   *Id.* at 43.

As to Thomas' freedom of speech and association claims, Magistrate Judge Schwab recommended that summary judgment be denied, as Defendants failed to demonstrate a rational connection between their actions and any legitimate penological interest.[10] Magistrate Judge Schwab recommended that summary judgment be granted as to Thomas' equal protection and conditions of confinement claims due to his failure to exhaust administrative remedies, and be denied as to Thomas' 42 U.S.C. §§ 1985(2) and 1986 conspiracy claims because Defendants failed to proffer any argument in favor of summary judgment as to those counts.[11] Over Defendants' objections, this Court adopted the Report and Recommendation.[12]

After disposing of Defendants' motion for summary judgment, six claims remain in this matter, including Thomas' claims for: (1) a violation of his right of access to courts (Count II); (2) conspiracy to violate his right of access to courts (Count III); (3) a violation of his rights to privacy, freedom of speech, and freedom of association (Count IV); (4) conspiracy to violate his rights to privacy, freedom of speech, and freedom of association (Count V); (5) conspiracy to deter him from testifying in federal court (Count VII); and (6) the failure of certain Defendants to prevent others from conspiring to deter Thomas from testifying in federal court (Count VIII).

---

[10] *Id.* at 44-47.
[11] *Id.* at 26-33, 51.
[12] Doc. 94.

Despite this matter ostensibly being ready to proceed to trial after the motion for summary judgment was disposed of, trial has been delayed by a series of additional motions that have since been filed. First, Defendants filed a motion to disqualify Thomas' attorney at trial, which this Court granted.[13] Prior to the Court granting that motion, Thomas filed a motion for sanctions related to the motion to disqualify, which this Court denied.[14] Thomas then filed a motion for reconsideration of the Order denying sanctions, which was also denied.[15] Now pending before the Court is Thomas' motion for judgment on the pleadings,[16] which he asserts should be granted because Defendants' admissions establish the necessary elements of every remaining claim.[17]

Defendants respond that the motion should be denied because (1) it is untimely under Federal Rule of Civil Procedure 12(c), or because Thomas included extraneous documents in his motion, which converts the motion into an untimely motion for summary judgment and (2) in any event, any admissions are insufficient to establish Defendants' liability.[18] Thomas has filed a reply brief,[19] and this matter is now ripe for disposition. For the following reasons, Thomas' motion will be denied.

---

[13]   Docs. 100, 127, 128.
[14]   Docs. 107, 114, 115.
[15]   Docs. 116, 125, 126.
[16]   Doc. 129.
[17]   Doc. 131.
[18]   Doc. 136.
[19]   Doc. 137.

## II.    DISCUSSION

"A motion for judgment on the pleadings under Rule 12(c) is analyzed under the same standards that apply to a Rule 12(b)(6) motion."[20] Accordingly,

> the court must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party, and may not grant the motion unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.[21]

"Thus, in deciding a motion for judgment on the pleadings, a court may only consider the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."[22]

### A.    Timeliness of Thomas' Motion

Defendants first argue that Thomas' motion for judgment on the pleadings is untimely for two reasons. First, they assert that the motion will delay trial, and is therefore untimely under Rule 12(c).[23] Second, they contend that the inclusion of materials outside of the pleadings should convert the motion to a motion for summary judgment, which would be untimely under the Scheduling Order.[24]

---

[20]    *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (internal quotation marks omitted).

[21]    *Id.* (internal quotation marks omitted).

[22]    *Id.* (internal quotation marks omitted).

[23]    Doc. 136 at 2-3.

[24]    *Id.* at 3.

As to Defendants' first argument, Federal Rule of Civil Procedure 12(c) provides that motions for judgment on the pleadings may be filed "[a]fter the pleadings are closed—but early enough not to delay trial." "While such motions are typically filed near the inception of the lawsuit and shortly after the pleadings close,"[25] motions for judgment on the pleadings "can be filed at any time before trial."[26] When such motions are filed after the close of discovery and after the dispositive motions deadline, courts have uniformly held that where the matter has not yet been "scheduled . . . for trial . . . [a motion for judgment on the pleadings] [ha]s undoubtedly" been filed early enough not to delay trial.[27] Because trial has not yet been scheduled in this matter, the Court concludes that Thomas' motion was filed "early enough not to delay trial"[28] and, accordingly, the motion is timely.

As to Defendants' assertion that the inclusion of materials beyond the pleadings converts Thomas' motion to a motion for summary judgment, the Federal Rules of Civil Procedure state that, if in a motion for judgment on the pleadings "matters outside the pleadings are presented to and not excluded by the court, the

---

[25] *Liburd v. Gov't of Virgin Islands*, No. CV 2011-020, 2013 WL 960780, at *3 (D.V.I. Mar. 13, 2013).

[26] *S.E.C. v. Wolfson*, 539 F.3d 1249, 1264 (10th Cir. 2008).

[27] *Sullivan v. Everett Cash Mut. Ins. Co.*, No. 4:18-CV-00207-HLM, 2019 WL 3808463, at *1 (N.D. Ga. Feb. 21, 2019). *See also Washington v. Matheson Flight Extenders, Inc.*, No. C17-1925-JCC, 2021 WL 489090, at *2 n.4 (W.D. Wash. Feb. 10, 2021) ("Because no trial is currently scheduled, [the] motion is timely"); *Pulte Home Corp. v. Montgomery Cty.*, 271 F. Supp. 3d 762, 769 n.3 (D. Md. 2017) (motion timely where "no trial date has been set"); *In re NC Swine Farm Nuisance Litig.*, No. 5:15-CV-00013-BR, 2017 WL 2312883, at *3 (E.D.N.C. May 25, 2017) (concluding "there is no issue over delaying trial, given [that] trials have not been scheduled").

[28] Fed. R. Civ. P. 12(c).

motion must be treated as one for summary judgment under Rule 56."[29] As this language implies, where matters beyond the pleadings are included in a motion for judgment on the pleadings, "the court has complete discretion to exclude them."[30]

Here, as Thomas concedes, the declaration that he has attached to his motion for judgment on the pleadings "has no relevance to any of the" dispositive issues in his motion.[31] Because the declaration is wholly irrelevant to the pending motion, the Court will exclude that declaration and its accompanying attachments. This motion therefore remains a motion for judgment on the pleadings and is not untimely.

### B.    Whether Thomas' Claims are Established by the Admissions

Second, Defendants argue that Thomas' motion fails on its merits; the Court agrees, as any admissions are insufficient to warrant judgment on the pleadings. As to four of Thomas' claims, he faces an insurmountable hurdle in attempting to obtain judgment on the pleadings: the existence of burden-shifting frameworks that permit Defendants to argue that, even if they infringed upon Thomas' constitutional rights, that infringement was justified by the penological setting in which the infringements occurred. These burden-shifting frameworks are "exceedingly fact-intensive,"[32] which renders Thomas' task of obtaining judgment on the pleadings difficult under

---

[29]   Fed. R. Civ. P. 12(d).
[30]   *Allen v. Hays*, 812 F. App'x 185, 189 (5th Cir. 2020) (internal quotation marks omitted).
[31]   Doc. 137 at 10.
[32]   *Holbrook v. Kingston*, No. CIV.A. 10-265, 2012 WL 2513487, at *5 (W.D. Pa. Apr. 30, 2012).

any circumstances.[33] Judgment on the pleadings is also not warranted for Thomas'

other two claims because any admissions do not satisfy all elements of those claims.

### i.    Freedom of Privacy, Speech, and Association Claims

With regard to Thomas' freedom of speech and association claims, a prison

rule that "impinges on inmates' constitutional rights, . . . is valid if it is reasonably

related to legitimate penological interests."[34] The burden rests with Defendants to

put forward a "legitimate governmental interest alleged to justify the regulation . . .

and demonstrate that [Defendants] could rationally have seen a connection between

the policy and that interest."[35] However, "[i]f such a rational relationship is found to

exist," the burden would then shift to Thomas to show that Defendants' actions or

rules were unreasonable.[36]

At the summary judgment stage, Defendants asserted that their actions were

rationally related to their interest in the safety and security of SCI Huntingdon. It is

---

[33]    *See, e.g.*, *Dubois v. Sweeney*, No. CV 18-3718 (PGS-LHG), 2019 WL 2272789, at *3 (D.N.J. May 28, 2019) (noting that arguments under burden-shifting framework are "better reserved for summary judgment when it can be supported with evidence outside of the pleadings"); *Detmer v. Gilmore*, No. 07-4177-CV-C-SOW, 2008 WL 2230698, at *2 (W.D. Mo. May 29, 2008) (noting that "facts outside plaintiff's pleadings are necessary for a determination to be made as to the reasonableness of the restrictions on his mail, and therefore, the issues in this case are more appropriately addressed at summary judgment"); *McKenzie v. O'Gara*, 289 F. Supp. 2d 389, 392 (S.D.N.Y. 2003) (arguments that relate to burden-shifting analysis are "more appropriately made in the context of a motion for summary judgment pursuant to Rule 56, rather than in a motion addressed to the face of the pleadings").

[34]    *Turner v. Safley*, 482 U.S. 78, 89 (1987).

[35]    *Jones v. Brown*, 461 F.3d 353, 360 (3d Cir. 2006) (citation and internal quotation marks omitted).

[36]    *Id.*

beyond cavil that prisons have "a 'substantial interest' in institutional security."[37] Despite this substantial interest, the Court denied summary judgment because Defendants failed to proffer evidence in their summary judgment motion that connected their actions with that legitimate penological interest.[38]

Nevertheless, Thomas asserts that Defendants' admissions are sufficient to establish their liability for this claim. Specifically, Thomas argues that Defendants admitted—by virtue of their failure to properly deny the allegations in Thomas' amended complaint—that no legitimate governmental interest was served by their actions that restricted Thomas' constitutional rights.[39] Thomas' mistaken argument stems from a fundamental misunderstanding of the difference between a factual allegation—which may be admitted based upon a failure to deny such allegation in a complaint—and a legal assertion, which cannot be admitted by Defendants' failure to deny such an assertion.[40]

Although the United States Supreme Court has "noted the vexing nature of the distinction between questions of fact and questions of law,"[41] the United States Court of Appeals for the Third Circuit has provided guidance on this issue. The Third

---

[37]  *Id.* at 361 (quoting *Bieregu v. Reno*, 59 F.3d 1445, 1458 (3d Cir. 1995)).

[38]  *See* Doc. 87 at 45-46.

[39]  Doc. 131 at 11-15.

[40]  *See* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1279 (3d ed. 2020) (noting "that a defendant's failure to deny conclusions of law does not constitute an admission of those conclusions"); *Dunbar v. Prelesnik*, No. 16-1374, 2016 WL 11618615, at *2 (6th Cir. Oct. 27, 2016) (holding that the "failure to [file an answer] constituted an admission of all of the complaint's *factual allegations* pursuant to Rule 8(b)(6)" (emphasis added)).

[41]  *Pullman-Standard v. Swint*, 456 U.S. 273, 288 (1982).

Circuit has explained that there are generally three categories of assertions: basic facts, inferred facts, and "ultimate facts."[42] "Basic facts are the historical and narrative events elicited from the evidence presented at trial, admitted by stipulation, or not denied, where required, in responsive pleadings."[43] "Inferred factual conclusions are drawn from basic facts and are permitted only when, and to the extent that, logic and human experience indicate a probability that certain consequences can and do follow from the basic facts."[44] Finally, the Third Circuit explained that:

> An ultimate fact is usually expressed in the language of a standard enunciated by case-law rule or by statute, e.g., an actor's conduct was negligent; the injury occurred in the course of employment; the rate is reasonable; the company has refused to bargain collectively. The ultimate finding is a conclusion of law or at least a determination of a mixed question of law and fact.[45]

Here, the determination of whether Defendants had any "legitimate penological interest[]"[46] in taking certain actions that may have inhibited Thomas' constitutional rights is plainly "a conclusion of law or at least a determination of a mixed question of law and fact," as it is "expressed in the language of a standard enunciated by case-law rule or by statute."[47] Simply put, the answer to that question

---

[42] *In re 15375 Mem'l Corp. v. Bepco, L.P.*, 589 F.3d 605, 616 (3d Cir. 2009).

[43] *Universal Mins., Inc. v. C. A. Hughes & Co.*, 669 F.2d 98, 102 (3d Cir. 1981).

[44] *Id.*

[45] *Id. See also In re 15375 Mem'l Corp.*, 589 F.3d at 616 ("whether the application of law to fact was proper, is reviewed as an ultimate fact and is subject to plenary review because it is, essentially, a conclusion of law").

[46] *Safley*, 482 U.S. at 89.

[47] *Universal Mins., Inc.*, 669 F.2d at 102.

is one that a jury must derive from the facts presented at trial. As this Court has previously explained,[48] because Thomas' assertions that Defendants had no legitimate governmental interest in taking their actions are legal assertions,[49] those assertions are not admitted by virtue of Defendants' failure to deny them.

Accordingly, it remains an open question—a question that may only be answered at trial—whether Defendants' actions were justified by a legitimate governmental interest, and whether Defendants could rationally have seen a connection between their actions and that interest.[50] Thus, Defendants admissions do not satisfy the elements of Thomas' freedom of privacy, speech, and association claim, and his motion for judgment on the pleadings must be denied as to Counts IV and V.[51]

---

[48]  Doc. 125 at 9.

[49]  *See Card v. Dugger*, 709 F. Supp. 1098, 1101 n.2 (M.D. Fla. 1988) ("The reasonableness of the changes in the No–Contact Visiting Park is a question of law (i.e., is the regulation reasonably related to legitimate penological interests), not a question of fact"), *aff'd*, 871 F.2d 1023 (11th Cir. 1989).

[50]  Although Thomas makes much of the fact that Defendants "could not and did not pursue discovery of any evidence of security concerns," Doc. 131 at 15, discovery issues are not relevant to a motion for judgment on the pleadings, which is cabined to the pleadings and other relevant documents.

[51]  Although Count V alleges a conspiracy to deny Thomas his constitutional rights, "[i]n order to prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law conspired to deprive him of a federally protected right." *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir. 1999). Because Thomas has not demonstrated that Defendants intended to unlawfully deprive Thomas of his constitutional rights, he necessarily has not demonstrated that Defendants conspired to so do.

## ii.   Access to Courts Claims

As Thomas' access to courts claim, it is well established that "[u]nder the First and Fourteenth Amendments, prisoners retain a right of access to courts."[52] To establish this claim, Thomas "must show (1) that [he] suffered an 'actual injury'— that [he] lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that [he] ha[s] no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit."[53] Critically, however, "this right does not entail unfettered or totally unrestricted visitation with counsel, for it must yield to legitimate penological interests."[54]

Thus, again, regardless of whether Defendants' actions impinged upon Thomas' right of access to courts, "so long as [those actions were] reasonably related to legitimate penological interests, such [impingement is] not of constitutional significance, even where [the impingement] result[ed] in actual injury."[55] Because, as detailed above, Defendants have not admitted—and could not admit by operation of Federal Rule of Civil Procedure 8(b)(6)—that their actions were not reasonably related to a legitimate penological interest, Thomas has not established the elements of his access to courts claim through the pleadings. Rather, Defendants must be

---

[52] *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008).

[53] *Id.*

[54] *Thomas v. Duvall*, No. 3:16-CV-00451, 2019 WL 8013742, at *14 (M.D. Pa. Oct. 3, 2019) (quoting *Lane v. Tavares*, No. 3:14-CV-00991, 2015 WL 435003, at *8 (M.D. Pa. Feb. 3, 2015)).

[55] *Lewis v. Casey*, 518 U.S. 343, 362 (1996).

12

afforded the opportunity to establish at trial that their actions were reasonably related to a legitimate governmental interest. Consequently, Thomas' motion for judgment on the pleadings must be denied as to Counts II and III.[56]

### iii. Claims Related to Alleged Conspiracy to Deter Federal Testimony

Finally, Thomas alleges that Defendants conspired to deter him from testifying in federal court, in violation of 42 U.S.C. § 1985(2), and/or failed to prevent others from conspiring to deter Thomas from providing such testimony, in violation of 42 U.S.C. § 1986. With respect to these claims, Thomas faces a different, but equally insurmountable hurdle in his quest to obtain judgment on the pleadings: a failure to establish that Defendants conspired to use force, intimidation, or threats to prevent Thomas from testifying at a federal hearing.

The Third Circuit has held that "[t]he essential allegations of a 1985(2) claim of witness intimidation are (1) a conspiracy between two or more persons (2) to deter a witness by force, intimidation or threat from attending court or testifying freely in any pending matter, which (3) results in injury to the plaintiffs."[57] As those factors

---

[56] Again, although Count III alleges a conspiracy to deny Thomas his constitutional rights, because Thomas has not demonstrated that Defendants intended to unlawfully deprive Thomas of his right of access to courts, he necessarily has not demonstrated that Defendants conspired to so do.

[57] *Rode v. Dellarciprete*, 845 F.2d 1195, 1206 (3d Cir. 1988) (internal quotation marks omitted).

13

make clear, an indispensable element of any claim under the first part of § 1985(2) is an agreement to deter through the use of force, intimidation, or threats.[58]

Here, Thomas' allegations—and, thus, any potential admissions—do not support that element of a § 1985(2) claim. It is undisputed that only one incident is actionable for Thomas' § 1985(2) claim—Defendants' purportedly disruptive conduct on May 23, 2015.[59] The vast majority of Thomas' allegations relate to Defendants' failure to provide him with a sufficiently-private meeting room in which to meet his attorney, as well as Defendants' alleged failure to pass documents between Thomas and his attorney in that non-contact room.[60] Indeed, with respect to Defendants Green and Eckard, Thomas alleges that they conspired to prevent Thomas from testifying in federal court by placing him "and his attorney in a non-contact booth having louvers in the outer door that allowed Duvall to listen to Plaintiff's attorney's advice and" by failing "to furnish the booth with reasonable means for Plaintiff to review the planned exhibits with the attorney to prepare to testify."[61] Such conduct, even if true, simply cannot be said to involve force, intimidation, or threats, nor from that alleged conduct could any reasonable factfinder infer the existence of an agreement to use force, intimidation, or threats.

---

[58] *See* 42 U.S.C. § 1985(2) (requiring a conspiracy "to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully").

[59] *See* Doc. 131 at 38 (asserting "[h]ere, the claims of Count VII and Count VIII are established. The claims pertaining to events in May 2015 were filed in the Complaint of March 14, 2016").

[60] *See* Doc. 21 at ¶¶ 114-32, 186-87, 190-91.

[61] *Id.* ¶ 187.

The only conduct that Thomas alleges that could plausibly involve the use of threats or intimidation relates to Duvall. In that respect, Thomas makes a series of, at times, somewhat conclusory allegations that

> Duvall spoke to Attorney Sawicki in a disrespectful and menacing manner both before and during the attorney conference on May 23, 2015. Duvall also made numerous threatening and disparaging comments while seated at the officers desk during Sawicki's interview with Thomas, knowing that Sawicki and Thomas would hear her hostile remarks through the louvered door to the booth . . . Duvall persisted in making audible hostile comments during the conference.[62]

Those allegations, while potentially involving intimidation or threats, do not involve more than one individual, nor is there any allegation that Duvall agreed with anyone else to take those actions, which is fatal to Thomas' motion, as conspiracy claims "require[] that two or more people conspire to do an unlawful act."[63] That is to say, Thomas "must demonstrate that the state actors named as defendants in the complaint somehow reached an understanding to deny the plaintiff his rights."[64] There is no well-pled allegation that anyone reached an understanding with Duvall to use force, threats, or intimidation to deter Thomas from testifying at trial, nor do any of the facts alleged lead inexorably to such an inference. At most, the allegations permit the inference that Defendants agreed to prevent Thomas from testifying in

---

[62] *Id.* ¶¶ 123-24.
[63] *McGreevy v. Stroup*, 413 F.3d 359, 371 (3d Cir. 2005).
[64] *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 295 (3d Cir. 2018) (brackets and internal quotation marks omitted).

federal court by depriving him of the means to have a private conference with his attorney, which would not be an unlawful act under § 1985(2).[65]

Accordingly, Thomas has not established that any Defendants entered into an agreement to use force, intimidation, or threats to deter Thomas from testifying in federal court, and he is not entitled to judgment on the pleadings as to count VII. Similarly, because "transgressions of § 1986 by definition depend on a preexisting violation of § 1985,"[66] Thomas' motion for judgment on the pleadings must also be denied as to Count VIII.[67]

---

[65] To the extent that Thomas relies on Paragraph 186 of the Amended Complaint to establish the existence of a conspiracy to deter Thomas' federal testimony through the use threats or intimidation, the averments in that paragraph are "simply too conclusory, vague, and general to" support his claim. *Alhallaq v. Radha Soami Trading, LLC*, 484 F. App'x 293, 297 (11th Cir. 2012). *See also Morast v. Lance*, 807 F.2d 926, 930 n.4 (11th Cir. 1987) (noting that many alleged "'retaliations' are conclusory in nature and are not specific examples of acts to deter testimony or attendance 'by force, intimidation, or threat'"). Additionally, Thomas' allegation that that Defendants Duvall and Wendle "conspired" with each other is an ultimate fact that, as discussed previously, is not susceptible to admission based upon Defendants' failure to deny that allegation in their answer.

[66] *Clark v. Clabaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994) (internal quotation marks omitted).

[67] *Cf. Gary v. Pa. Hum. Rels. Comm'n*, 497 F. App'x 223, 227 (3d Cir. 2012) ("Absent a valid § 1985(3) claim, [appellant's] claim under 42 U.S.C. § 1986 fails, as liability under that statute is predicated on actual knowledge of a § 1985 violation"). Moreover, even if Thomas could establish his § 1985(2) claim, his complaint only alleges that Defendants Wendle, Green, and Eckard knew that Duvall and others "had communicated to one another their intent to deprive prisoners like Thomas of access to the means of having a policy-compliant confidential contact visit with their attorney." Doc. 21 ¶ 147; *see id.* ¶ 190. This does not establish that those individuals had actual knowledge of a conspiracy to use of force, intimidation, or threats to deter testimony in federal court and, thus, does not establish liability under § 1986.

## III.    CONCLUSION

The Court concludes that the allegations in the Amended Complaint, and any admissions by Defendants, are insufficient to establish Defendants' liability as to any of the remaining six counts. Consequently, the Court will deny Thomas' motion for judgment on the pleadings.

An appropriate Order follows.

BY THE COURT:

_s/ Matthew W. Brann_
Matthew W. Brann
United States District Judge

17